UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JOSE GUADALUPE ALTAMIRANO AHUMADA,
Petitioner,
v.
CHRISTOPHER J. LAROSE,
Respondent.

Case No.: 26cv5331-LL-DEB

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Jose Guadalupe Altamirano Ahumada's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 11. Respondents filed a Response [ECF No. 12] and Petitioner filed a Traverse [ECF No. 13]. For the reasons set forth below, the Court **GRANTS** the Amended Petition and **ORDERS** an immediate release.

**I. BACKGROUND**

Petitioner is a native and citizen of Mexico. Ex. A, Declaration of Jose Guadalupe Altamirano Ahumada ("Ahumada Decl.") ¶ 1. On April 19, 2024, Petitioner entered the United States near the Port of Entry in Arizona, where he was apprehended, processed, and

released into the United States under the Alternatives to Detention ("ATD") program. *Id*. ¶ 3; ECF No. 12-1 at 3.

On August 21, 2026, Petitioner was arrested at his check-in appointment with ICE. Ahumada Decl. ¶ 11; ECF No. 12-1 at 2. Respondents claim that Petitioner was arrested due to multiple violations of his ATD. Ret. at 3; ECF No. 12-1 at 2. Petitioner disputes these violations as he had experienced multiple issues with the tracking watches that had to be replaced three times between September 2025 and July 2026, received prior permission from ICE to travel outside the master zone, and resolved the issue with ICE agent when he traveled slightly outside the master zone by accident in February 2026. Ahumada Decl. ¶¶ 4–10.

On October 1, 2026, Petitioner filed the instant Amended Petition alleging Respondents violated the Fifth Amendment's Due Process Clause and the Administrative Procedures Act ("APA"). Pet. 4–6. Specifically, Petitioner claims that Respondents provided no written notice or a pre-deprivation hearing before detaining him. *Id*.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner argues that his re-detention without notice or a hearing violates the Fifth Amendment's Due Process Clause and the APA. Pet. 4–6. Respondents concede that

"Petitioner was previously released from immigration custody on parole" and that they "do not oppose an order from this Court directing a bond hearing to be held pursuant to 8 U.S.C. § 1226(a)." Ret. at 2–3. Because the Court finds that Petitioner's Fifth Amendment claim is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.[1]

The Due Process Clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

"[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). In fact, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community."

---

[1] Because the Petition can be resolved on due process grounds, the Court declines to reach Petitioner's claims of APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156 (S.D. Cal. 2025) ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

*Pinchi*, 792 F. Supp. 3d at 1034. Thus, ICE may not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)).

Here, Petitioner was previously released from immigration custody on parole in 2024 (Ahumada Decl. ¶ 3) and thus held a protected liberty interest in remaining out of custody. Accordingly, the Due Process Clause required procedural protections before he could be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that revocation of Petitioner's parole without notice or an opportunity to be heard violated Petitioner's due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for the revocation or giving him an opportunity to be heard. "Once a noncitizen has been released, the law prohibits federal

agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* After initially finding that Petitioner was neither a flight risk nor a danger to the community, Respondents have not produced any valid argument or evidence that these findings have changed.

Respondents, however, "does note that Petitioner missed 6 Biometric Check-Ins and accumulated 8 'Master Zone Leave Alerts' in violation of his [ATD program]." Ret. 3. Interestingly, Respondents do not expressly argue that Petitioner's alleged ATD violations and missed check-ins constitute a sufficient change in circumstances to justify Petitioner's re-detention without notice or a hearing. *See generally* Ret. Any such argument would be unsuccessful regardless since an ATD violation "does not eliminate [government's] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (finding a petitioner was entitled to a pre-deprivation hearing on his alleged ATD violations before being arrested and re-detained); *see also Manyanga-Mpinguyabu v. LaRose*, No. 26-CV-1460-JES-SBC, 2026 WL 776399, at *3 (S.D. Cal. Mar. 19, 2026) ("[c]ourts have found such liberty interest even where violations of the ATD conditions have occurred"); *Perez v. Andrews*, No. 1:26-CV-07962-JLT-HBK, 2026 WL 3120968, at *3 (E.D. Cal. Oct. 19, 2026) (finding government's allegations of ATD violations failed to adequately show a change in circumstances to justify re-detention without a pre-deprivation hearing); *Avila v. Warden, Adelanto ICE Processing Ctr.*, No. 5:26-CV-02701-KS, 2026 WL 2203141, at *2–4 (C.D. Cal. July 29, 2026) (releasing petitioner for unlawful re-detention without adequate process even after the government alleged that petitioner had missed several biometric check-ins with ICE). Thus, Petitioner's alleged ATD violations and missed check-ins do not alter the *Mathews* analysis when considering whether Petitioner's re-

detention without notice or a pre-deprivation hearing violated Petitioner's protected liberty interest.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "[A]lthough it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

Therefore, because Respondents detained Petitioner by revoking his release without notice or a hearing in violation of the Due Process Clause, Petitioner's detention is unlawful. *See e.g.*, *Sanchez*, 2025 WL 2770629, at *4 (granting a writ of habeas corpus and releasing petitioner from custody after finding the petitioner's parole was revoked without notice and a hearing, thereby violating her due process rights and rendering her detention unlawful).

As has been found in countless similar cases in this district, the appropriate remedy in such case is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori*, 807 F. Supp. 3d at 1163–66 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or a pre-deprivation hearing). Accordingly, the Court **GRANTS** Petitioner's Amended Petition.

/ / /

/ / /

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus and **ORDERS** that Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: October 27, 2026

Honorable Linda Lopez
United States District Judge